EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* GREGORIO LEÓN AQUINO, CARLOS VIDAL MARGARIDA y DANIEL MORALES ANDINO, acusados y apelantes.

Núm. 11868.—*Sometido:* Abril 9, 1947. *Resuelto:* Julio 7, 1947.

*Francisco Torres Aguiar,* abogado de los acusados; *Hon. Procurador General Luis Negrón Fernández,* y *Joaquín Correa Suárez, Fiscal Auxiliar del Tribunal Supremo,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

El tercero de los trece errores imputados por los acusados a la corte inferior es al efecto de que ésta erró "al permitir y declarar formal el veredicto, ya que éste es contrario al *delito* y a la *prueba.*"

En 28 de marzo de 1945 el fiscal del distrito de San Juan formuló acusación contra los aquí apelantes por el delito de violación. El juicio se vió en 7 de junio del mismo año, trayendo el jurado un veredicto condenatorio contra todos ellos por ese delito. La supuesta perjudicada en este caso fué una sordomuda llamada Carmen María Soto, quien declaró interpretada por su hermana Leonida Soto. Aunque el segundo de los errores señalados fué que la corte erró al permitir como intérprete de la presunta perjudicada a su hermana Leonida Soto por no estar esta última capacitada para interpretarla, a los fines de la discusión del tercer error asumiremos que la designación estuvo bien hecha y que Carmen María Soto fué debidamente interpretada por su hermana.[1]

Mientras ocupaba la silla testifical, Carmen María Soto interpretada en la forma que ya hemos indicado, manifestó que un día los acusados la cogieron por sorpresa y la retuvieron desde las seis y media de la tarde hasta las tres de la mañana del siguiente día; que le dieron un golpe en la barbilla, por detrás y en el pecho, así como en el suelo y que los tres, señalando a los acusados, tuvieron contacto carnal con ella. Al preguntársele por el ministerio público con qué parte del cuerpo fué que tuvieron contacto carnal, ella replicó que *"fué con la parte sucia"*; que Margarida lo hizo dos veces, Daniel Morales tres, y Gregorio de León tres.

El Dr. Arsenio Comas, perito médico llamado por El Pueblo, declaró que Carmen María Soto le fué llevada en la mañana del día 27 de septiembre de 1944 con instrucciones de que la examinara;[2] que así lo hizo, notando que ésta presentaba contusiones en el pulgar izquierdo y en la barbilla, rasguño de dos pulgadas de largo sobre el omóplato izquierdo,

---

[1] Véase *Pueblo* v. *Arroyo,* 38 D.P.R. 530.

[2] Si bien en la acusación se alega que el delito imputado se cometió en la noche del 24 al 25 de septiembre, sin embargo al iniciarse el juicio el Fiscal solicitó se le permitiera enmendar la acusación para que ésta leyera que el delito fué cometido durante la noche del 25 al 26 de septiembre de 1944 y la corte así lo autorizó.

rasguños en el pecho, en la mejilla izquierda y en uno de los dedos de la mano izquierda, así como múltiples rasguños en el antebrazo derecho. Manifestó también que examinó a Carmen María Soto vaginalmente y que "ésta era mujer, dicho por ella." Sigue diciendo el Dr. Comas que Carmen María Soto estaba con período y *en la vulva no presentaba signos de violencia alguna.* Más tarde, repreguntado por el letrado de la defensa, manifestó que *la perjudicada Carmen María Soto no daba muestras de haber sido violada.*

Si bien es cierto que al ser interrogada más tarde por uno de los jurados respecto a "si tuvieron contacto carnal con ella," Carmen María Soto contestó afirmativamente y dijo "que sí, los tres," sin embargo la declaración del Dr. Comas y las manifestaciones de la propia perjudicada al preguntársele específicamente con qué parte del cuerpo fué que tuvieron contacto carnal y contestar ella "que fué con la parte sucia," nos llevan al convencimiento de que aunque quedó probado que los tres acusados tuvieron contacto carnal con la perjudicada por medio de la fuerza y la violencia, no realizaron con ella ese acto en la forma ordinaria, sino más bien en forma anormal. Si conforme dijo Carmen María Soto los tres acusados realizaron con ella el acto carnal en siete ocasiones y esos actos se ejecutaron violentamente, era natural que dicha mujer presentara signos de violencia en la vagina. Empero, el Dr. Comas, repetimos, declaró sobre la ausencia de tales signos, y por otra parte, la misma perjudicada de manera enfática manifestó que el acto se realizó por la parte sucia.

Habiendo nosotros llegado a la conclusión de que el acto carnal no se efectuó en forma ordinaria sino contra natura, ¿es posible sostener el veredicto? Creemos que no. El delito de violación está definido por el artículo 255 del Código Penal y castigado con pena de presidio por el término mínimo de un año. El infame delito contra natura no está definido específicamente por nuestro Código (Véase el artículo 278 del

Código Penal, según fué enmendado por la Ley núm. 42 de 4 de mayo de 1943, pág. 107)(³) y es castigado con pena mínima de un año y máxima de diez años de presidio. Se trata, pues, de dos delitos completamente separados y distintos y dentro de una acusación por el delito de violación no puede rendirse un veredicto por el infame crimen contra natura.

El artículo 283 del Código de Enjuiciamiento Criminal de Puerto Rico, tomado de California, no contiene la siguiente oración que aparece en su equivalente allí, que lo es el artículo 1151 del Código Penal de dicho estado: "Cuando el acusado es absuelto basado en una incongruencia entre la acusación y la prueba, el veredicto debe ser 'no culpable por razón de incongruencia entre la acusación y la prueba.'" En Puerto Rico la práctica seguida en los casos en que el veredicto es contrario a derecho o a las pruebas, es solicitar un nuevo juicio en la propia corte inferior.(⁴) En este caso los autos no demuestran que se solicitara un nuevo juicio y que se diera oportunidad al juez de la corte sentenciadora para corregir el error. La cuestión, conforme antes hemos indicado, se levanta por primera vez en el alegato de los apelantes.

En el caso de *El Pueblo* v. *González,* 17 D.P.R. 1186, el fiscal del distrito de San Juan acusó a éste del delito de falsa representación e impostura. Los hechos alegados en la acusación tendían más bien a imputar el delito de hurto. No obstante ello el jurado rindió veredicto declarando al acusado culpable de falsa representación. Este Tribunal resolvió que si el veredicto del jurado se hubiera limitado a la expresión de "culpable", el mismo hubiera podido ser sostenido por nosotros, pero que habiendo dicho veredicto declarado al acusado culpable del delito de falsa representación, que no era el determinado por los hechos expuestos en la acusación, se había sentenciado al acusado por un delito no imputádole, procediendo en su virtud la revocación de la sentencia. El

---

(³)Véase *Pueblo* v. *Díaz,* 35 D.P.R. 230.
(⁴)Véase el art. 303, inciso 6, del Código de Enjuiciamiento Criminal.

caso que nos ocupa no es idéntico al de *El Pueblo* v. *González*, supra, pero. existe cierta similitud entre ellos en lo que a la cuestión de derecho ante nos concierne. Allí se declaró al acusado culpable de un delito que no se le imputó en la acusación. Aquí la prueba demuestra que el supuesto delito cometido no es el alegado en la acusación sino otro. La incongruencia en aquél fué clara. En éste también lo es.

*Debe revocarse la sentencia apelada y absolverse a los acusados, sin perjuicio de que el ministerio fiscal formule nuevas acusaciones contra los aquí apelantes por el infame crimen contra natura, si es que a su juicio las mismas proceden.*